**UNITED STATES DISTRICT COURT**

**DISTRICT OF SOUTH CAROLINA**

**ROCK HILL DIVISION**

| | | |
|---|---|---|
| Pamela Crow, individually and as the Personal Representative of the Estate of Cedarian Jamone Crow,<br><br>Plaintiff,<br><br>vs.<br><br>Carlos Culbreath, Tony Breeden, Monica Parker, Ben Delshad, Justin Spader, Jerry Sanders, Steven Pearcy, Robert Anderson, Christopher Revels,<br><br>Defendants. | ) | C/A No:<br><br>COMPLAINT<br>(42 U.S.C. § 1983)<br>(Jury Trial Demanded) |

Plaintiff named herein, complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

**JURISDICTION**

1. This action is an action for money damages brought pursuant to 42 U.S.C.A. §§ 1983, et seq., and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants.

2. Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A. §§ 2201 and 2202.

**PARTIES**

3. The Plaintiff, Pamela Crow, is a citizens and residents of the County of Mecklenburg, North Carolina. Additionally, she is the duly appointed Personal Representatives of the Estate of Cedarian Jamone Crow, having been so appointed by the Mecklenburg County Probate Court on the 29th day of April, 2021, under Case No. 2021E001762.

4. This suit is filed on behalf of the heirs of Cedarian Jamone Crow.

5. At all times mentioned in the Complaint, the Defendants Carlos Culbreath, Tony Breeden were supervisors, administrators, and/or employees of the Rock Hill Police Department who supervised others at the Rock Hill Police Department. At all relevant times hereinafter mentioned these Defendants were acting individually as employees and/or administrators of the Rock Hill Police Department. For purposes of claims asserted under 42 U.S.C. § 1983, these Defendants are being sued in their individual capacity, under the color of state law. Upon information and belief, these Defendants either had direct contact with the decedent, had direct knowledge of his medical condition (including his need for medical care), or supervised others who had direct contact with him.

During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to the Defendants listed above, including and not limited to, the decedent's right to appropriate medical care and due process. Additionally, these Defendants had actual and/or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to the decedent. Further, the response of these Defendants to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by them as alleged herein; and there was a causal link between their actions and/or inactions and the Constitutional injury suffered by the Plaintiff/decedent.

6. Upon information and belief (during the time period set out below) Defendants Monica Parker, Ben Delshad, Justin Spader, Jerry Sanders, Steven Pearcy, Robert Anderson, Christopher Revels were Officers of the Rock Hill Police Department who had direct contact with the decedent and became aware of his serious medical condition. Prior to his death, these Defendants had the obligation and the opportunity to secure the appropriate medical care and treatment, refrain from utilizing excessive force/physical cruelty and to afford the decedent due process. These Defendants utilized excessive force and were deliberately indifferent to the emergent medical needs of the decedent by consciously failing to secure the appropriate lifesaving medical care. A more detailed description of the Defendants' actions are set out below. During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to each of the Defendants listed above, including and not limited to, the decedent's right to appropriate medical care and due process. For purposes of claims asserted under 42 U.S.C §1983, these Defendants are being sued in their individual capacity under the color of state law.

7. The allegations set forth in this Complaint occurred in York County; therefore, venue is proper in this District.

## **FACTS**

8. The acts and occurrences which give rise to this action occurred while the Decedent was in the care and custody of the Defendants while in the custody of and/or being detained by the Rock Hill Police Department.

9. Law Enforcement officials have a federal constitutional duty (under the 8th Amendment) to protect detainees from probable foreseeable harm. In this case the Plaintiff is informed and believes that (a) the arresting officers knew or should have known that the

decedent was exposed to a substantial risk of serious harm to his physical safety; (b) the Defendants consciously failed to take reasonable measures to abate the obvious risk; and (c) the decedent suffered serious injuries and death as a direct result thereof.

10. On February 29th, 2020 at approximately 2:40pm, Rock Hill Police Department ("RHPD") officers were dispatched to 1360 Cypress Point Drive, Apt. 107, Rock Hill, SC in reference to a domestic dispute. Defendant Monica Parker was the first to arrive and encountered Cedarian Crow (hereinafter "decedent") in the apartment complex parking lot, visibly distraught, upset and clearly agitated. Additionally, based on her training, it should have been abundantly clear to Defendant Parker that the decedent was suffering from mental health issues and/or was experiencing a reaction to drugs/medication.

11. Defendant Monica Parker's body-cam video footage of the incident confirms that she exited her patrol vehicle and approached the decedent – who was visibly upset, striking a parked vehicle, unable to talk, and drenched in sweat. The Plaintiff is informed and believes that when Defendant Parker arrived, the decedent was clearly in need of immediate medical attention. Defendant Parker told SLED investigators that the decedent appeared to be suffering from delusions as he was yelling and pointing at objects in the parking lot that were not there. However, Defendant Parker consciously failed to call EMS and instead, detained the decedent by attempting to place him in handcuffs. Based on this Defendant's training and applicable policy and procedure, she should have immediately contacted EMS to have the decedent stabilized, given Narcan and taken to the closest hospital for a mental and physical examination and treatment. The EMS personnel and the medical personnel at the hospital, would likely have administered immediate care and treatment, which he required and he would have survived.

Further, this Defendant was keenly aware that her failure to follow her policy and procedures would likely place the decedent in an obvious risk of harm.

12. Shortly thereafter other Rock Hill Police Department personnel [to include Lt. Carlos Culbreath, Ofc. Den Delshad, Ofc. Justin Spader, Ofc. Jerry Sanders, Ofc. Steven Pearcy, and Ofc. Robert Anderson] arrived on the scene. Upon arrival, these Defendants all recognized that the decedent was clearly delusional, unable to speak clearly and behaving erratically. This was a clear indication, to these Defendants, that the decedent was experiencing profound mental problems and/or suffering from an adverse reaction to drugs/alcohol. However, EMS was not contacted, nor was any medical assistance offered to the decedent. Instead, excessive force was utilized by these Defendants by violently taking the decedent to the ground and placing him in restraints. Based on their training, it should have been abundantly clear that the decedent required emergent medical care. Therefore, each of the Defendants had a duty to contact EMS and have the decedent immediately seen by EMS personnel and immediately transported to the hospital for examination and treatment. These Defendants were also highly aware that their conscious failure to follow their training would result in harm to the decedent.

13. As the decedent was obviously, severely impaired and mentally unstable, the officers [to include and not be limited to Defendants Carlos Culbreath, Monica Parker, Ben Delshad, Justin Spader, Jerry Sanders, Steven Pearcy, Robert Anderson] should have initiated the appropriate protocols in order to deal with this type of situation. These Defendants should have taken the appropriate measures to take the decedent into custody and then they should have ensured that he was taken directly to the closest hospital either by EMS or in one of their police vehicles. Instead, the decedent was forcibly handcuffed and later pushed into the back of Defendant Delshad's patrol vehicle and taken to the police headquarters. The Plaintiff is

informed and believes that the decedent was not placed in a seatbelt. This was a conscious violation of their policies and procedures. Had the decedent been properly restrained in a seatbelt, it is likely that some of his injuries, he suffered, would have been prevented.

14. Almost immediately upon placing the decedent into Defendant Delshad's vehicle, the decedent began to beat his head against the window and thrash around in the back of the police vehicle. This was witnessed by both Defendants Delshad and Spader. However, instead of contacting EMS and/or transporting the decedent to the nearest hospital, Defendant Delshad inappropriately transported the decedent to the Rock Hill Police Department. The Plaintiff is informed and believes that it is well documented through camera footage, as well as statements from Defendants Delshad, Spader and Anderson that the decedent continued his erratic behavior during the entire drive to the Police Department. Based on his extensive training, Defendant Delshad should have driven the decedent to the nearest hospital for immediate examination and treatment. Had he taken this action, it is likely that the decedent would have survived.

15. The Plaintiff is informed and believes that by the time Defendant Delshad arrived at the Rock Hill Police Department, the decedent had collapsed, and was unresponsive, on the floorboard of Defendant Delshad's vehicle. Multiple officers [to include Defendants Tony Breeden, Ben Delshad, Justin Spader, Robert Anderson, Christopher Revels] were needed to assist Defendant Delshad with removing the decedent from the vehicle. Once outside the vehicle, the decedent was lowered to the ground (still handcuffed behind his back) and EMS was contacted. All of the Defendants [to include and not be limited to Defendants Carlos Culbreath, Tony Breeden, Monica Parker, Ben Delshad, Justin Spader, Jerry Sanders, Steven Pearcy, Robert Anderson, Christopher Revels] were trained and certified to take off the handcuffs and begin lifesaving treatment, to include basic CPR. Each of the Defendants [to include and not be limited

to Defendants Carlos Culbreath, Tony Breeden, Monica Parker, Ben Delshad, Justin Spader, Jerry Sanders, Steven Pearcy, Robert Anderson, Christopher Revels] consciously failed to take this action. Had this been carried out in a timely fashion, it is likely that the decedent would have survived.

16. At approximately 3:14pm EMS arrived on the scene. EMS responders documented that upon arrival on scene they observed the decedent lying on the ground, unmoving, with his hands handcuffed behind his back; there were several officers standing around him. The decedent was found to be pulseless and apneic at that time and CPR was finally initiated. He was immediately transported to Piedmont Medical Center, where he was ultimately pronounced dead at 4:52pm.

17. Prior to the events in question, each of the individual Defendants had received training to recognize when a detainee had a serious medical condition which required emergent medical care. Additionally, these Defendants had received training that required them to ensure that the detainees needing such medical care received it in an emergent fashion. In this case, the Defendants consciously failed to take these actions even though they were trained to provide it. Further, even without training, the individual Defendants (who had contact with the decedent) should have easily been able to recognize that he had a serious medical condition which required emergent medical care.

18. An autopsy was held on March 4, 2020 documenting the cause of death as acute cocaine toxicity; however, a second autopsy (performed on March 17, 2020) documented that the decedent suffered from multiple blunt traumatic injuries.

19. All Defendants (including all supervisory staff) had more than sufficient knowledge of the decedent's condition and they all acted in blatant disregard of the health and

life. These Defendants had direct contact with the decedent (during the time period in question) or supervised those who had direct contact with him. Further, these Defendants had the opportunity and obligation to secure the appropriate medical treatment and care for the decedent. These Defendants were deliberately indifferent to the emergent medical needs of the decedent by consciously failing to recognize and secure the appropriate medical care and/or treatment which would have included proper assessment, evaluation and medications. Based directly on their actions or inactions, the decedent suffered needlessly (both physically and mentally) and died on February 29, 2020.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(SURVIVAL)**

20. Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

21. The Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as officers and/or supervisors of the Rock Hill Police Department and had certain duties imposed upon them with regard to Cedarian Crow. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to proper medical care and to be free from cruel and unusual punishment.

22. The Defendants were consciously and deliberately indifferent to the decedent and the Plaintiff on or around February 29, 2020 in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so.

Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to use even slight care and caution in safekeeping the decedent;

(c) in entering into a pattern and practice of failing to provide appropriate medical care;

(d) in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e) in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(f) in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(g) in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to detainees/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h) in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i) in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(j) in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(k) in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical care;

(l) if said procedures do exist, in consciously failing to follow same;

(m) in abandoning the decedent when he was in desperate need for medical care;

23. As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally, and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Additionally, as a direct result of the above, the decedent suffered needlessly and ultimately died.

24. As a result, the decedent suffered conscious pain, mental and physical suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotions distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(WRONGFUL DEATH)**

25. Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

26. The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage, or policy at all times mentioned herein, as officers and/or supervisors of the Rock Hill Police Department and had certain duties imposed upon them with regard to Cedarian Crow. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to medical care and to be free from cruel and unusual punishment.

27. The Defendants were consciously and deliberately indifferent to the decedent and Plaintiff during the time period mentioned in the facts in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to use even slight care and caution in safekeeping the decedent;

(c) in entering into a pattern and practice of failing to provide appropriate medical care;

(d) in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e) in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(f) in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(g) in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to detainees/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h) in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i) in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(j) in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(k) in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical care;

(l) if said procedures do exist, in consciously failing to follow same;

(m) in abandoning the decedent when he was in desperate need for medical care;

28. As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the <u>United States Constitution</u>.

29. The Defendants jointly, severally and in combination thereof, wrongfully caused the death of Cedarian Crow by their acts and omissions as described above.

30. As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

(a) loss of financial economic support and contribution of the deceased;

(b) extreme mental shock and suffering;

(c) extreme wounded feelings;

(d) tremendous grief and sorrow;

(e) loss of friendship and companionship; and

(f) deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

31. The Plaintiff is informed and believes that the Estate of Cedarian Jamone Crow is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants, pursuant to the violation of her Federal Civil Rights 42 USC 1983 – Wrongful Death.

32. As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(SURVIVAL)**

33. Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

34. The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the Rock Hill Police Department and had certain duties imposed upon them with regard to Cedarian Crow. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

35. The Defendants' actions were consciously and deliberately indifferent to the decedent and the Plaintiff during the time period mentioned in the facts in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to use even slight care and caution in safekeeping the decedent;

(c) in entering into a pattern and practice of failing to provide appropriate medical care;

(d) in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e) in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(f) in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(g) in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to detainees/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h) in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i) in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(j) in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(k) in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical care;

(l) if said procedures do exist, in consciously failing to follow same;

(m) in abandoning the decedent when he was in desperate need for medical care;

36. As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly and severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

37. As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his life. The Plaintiff, who has suffered the loss of the life of the decedent, loss of support,

mental anguish, loss of quality of life, emotional distress, incurred funeral expenses, attorney fees, and undue grief and will likely suffer from the effects of the Defendants' actions now and in the future, demand damages from the Defendants, jointly and severally for ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES.

## FOR A FOURTH CAUSE OF ACTION
## VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983
## (VIOLATION OF DUE PROCESS – 14TH AMENDMENT)
## (WRONGFUL DEATH)

38. Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

39. The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the Rock Hill Police Department and had certain duties imposed upon them with regard to Cedarian Crow. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

40. The Defendants' actions were consciously and deliberately indifferent to the decedent and the Plaintiff during the time period mentioned in the facts in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to use even slight care and caution in safekeeping the decedent;

(c) in entering into a pattern and practice of failing to provide appropriate medical care;

(d) in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e) in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(f) in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(g) in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to detainees/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h) in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i) in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(j) in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(k) in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical care;

(l) if said procedures do exist, in consciously failing to follow same;

(m) in abandoning the decedent when he was in desperate need for medical care;

41. As a direct and proximate result of the Defendants' acts of willful, malicious and deliberate indifference, jointly and severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

42. The Defendants, jointly, severally and in combination thereof, wrongfully caused the death of Cedarian Crow by their acts and omissions as described above.

43. As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

(a) loss of financial economic support and contribution of the deceased;

(b) extreme mental shock and suffering;

(c) extreme wounded feelings;

(d) tremendous grief and sorrow;

(e) loss of friendship and companionship; and

(f) deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

44. The Plaintiff is informed and believes that the Estate of Cedarian Jamone Crow is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants, pursuant to the violation of their Federal Civil Rights 42 USC 1983 – Wrongful Death.

45. As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions

now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, both jointly, severely and in combination thereof, for ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs and reasonable attorney fees. The Plaintiff demands a trial by jury as provided for in the Seventh Amendment to the Constitution of the United States of America.

__*s/ C. Carter Elliott, Jr.*____

C. Carter Elliott, Jr.
U.S.D.C. Bar #: 5423
Elliott, Phelan, Kunz & Slocum, LLC
117 ½ Screven Street
P.O. Box 1405
Georgetown, SC 29442
(843) 546-0650 (phone)
(843) 546-1920 (fax)
carter@elliottphelanlaw.com

February 28, 2023
Georgetown, South Carolina